No. 912.

## The Lake Erie and Western Railroad Company *v.* Lowder.

CHANGE OF VENUE.—*Costs of.*—*Failure to Pay.*—*Right to Change Defeated.*—Where, on application for a change of venue from the county, the court grants the change, conditioned that the costs of the change shall be paid in a time fixed by the court, the failure to pay the costs within such time destroys the right to a change, and the fact that the clerk has money in his hands to which the party asking for the change is entitled, can not, of itself, be construed as a payment of such costs.

SAME.—*Failure to Perfect in Time Fixed.*—*Remanding the Cause.*—*Jurisdiction.*—Where a change of venue has been granted, and the change is not perfected in the prescribed time, the court to which the case was taken may remand the case, provided the court to which the change was taken obtains jurisdiction, and if no jurisdiction is acquired, the remanding order is simply nugatory and harmless.

RAILROAD.—*Negligence.*—*Presumption.*—*Accident to Train.*—*Proximate Cause.*—*Liability.*—Where an accident occurs to a train by reason of a defect in the road, the law will presume that the railroad company was negligent in the construction or maintenance of the road, but this presumption may be rebutted by evidence; and where an accident occurs and the negligence of the company is not the natural and proximate cause thereof, there is no liability on such company for any damage resulting therefrom.

SAME.—*Dangerous Freight, Oil Tanks.*—*Requisite Care.*—It is the duty of a railroad company, so far as the rights of an adjacent property-owner is concerned, to exercise care and skill commensurate with the undertaking; and great care should be taken in the transportation through towns and cities, in the night time, of heavy freight trains consisting largely of tanks of oil, which, in the event of an accident, would be dangerous to adjoining property and to life.

Opinion on petition for rehearing by DAVIS, J.

From the Howard Circuit Court.

*W. E. Hackedorn, J. O'Brien* and *F. S. Foote,* for appellant.

*J. C. Blacklidge, C. C. Shirley* and *B. C. Moon,* for appellee.

DAVIS, J.—In the trial court, appellee recovered judgment for eleven hundred and ten dollars.

The errors assigned are:

"1st. The Howard Circuit Court did not have jurisdiction to hear and determine this cause at the time said cause was heard and determined in said court.

"2d. The appellant says that the Clinton Circuit Court erred in sustaining the motion of appellee to return this cause to the Howard Circuit Court and in returning this cause to the Howard Circuit Court.

"3d. The Howard Circuit Court erred in overruling the demurrer of the appellant to the supplied complaint of the appellee, filed in this cause.

"4th. The Howard Circuit Court erred in overruling the motion of the appellant for a new trial, made in this cause."

Seven other errors are assigned in relation to instructions given and refused.

It has been so often decided that reasons for a new trial can not be made the basis for independent assignments of error that the citation of authorities is unnecessary. The errors five to eleven, inclusive, are properly assigned as causes for a new trial, and will be considered under the fourth assignment. The first and second may be considered together.

It appears that on the 8th of April, 1890, appellant filed, in the Howard Circuit Court, an application for change of venue, which was granted on the 12th, and the cause sent to the Clinton Circuit Court on payment of costs of change within fifteen days. Prior to that time, pursuant

to certain condemnation proceedings, a sum in excess of $100 had been paid into the office of said clerk for appellant. Nothing was said to the clerk in regard to the change of venue, and no steps were taken to perfect the same until the 28th, when, pursuant to the request of one of the attorneys, and pursuant to his promise to be responsible for the fee, the clerk made and forwarded to the Clinton Circuit Court the transcript and papers on change of venue. On the 27th of May, 1890, appellee appeared in the last named court and made application to remand the cause to the Howard Circuit Court, because the costs of change had not been paid and the change perfected within the time allowed therefor. This motion, over objection of appellant, was sustained, and the cause remanded.

We can not agree with counsel for appellant that the only penalty for failure to pay the costs of the change should be the payment of the costs accrued to the time of taking the change, or the fact that the clerk may have in his hands money to which the party asking for the change is entitled, should, of itself, be construed as a payment of such costs, or that the court to which the change of venue was granted had no jurisdiction to order the case returned to the court granting the change, on an application showing the failure to pay the costs and perfect the change within the time fixed, or that a change granted on the 12th of April, 1890, can be said to be perfected within fifteen days, by the payment of the costs on the 28th. The record which comes to us discloses, without contradiction, that the order granting the change was made on the 12th. We should not presume, because this may have been on Saturday, that the record was not, in fact, read and signed until Monday, the 14th, for the purpose of allowing fifteen days from that date in which to perfect the change.

We quote from the statute as follows: "If the party fails to pay the costs of the change within the time prescribed by the court, he shall be taxed with all the costs made in the case up to the time of such failure, and shall not be entitled to a change of venue from the county." Section 413, R. S. 1881.

The failure to pay the costs within the time so fixed destroys the right to the change. *Louisville, etc., R. W. Co.* v. *Grubb,* 88 Ind. 85.

There was no error in the action of the Clinton Circuit Court, on the uncontroverted facts, in remanding the cause to the Howard Circuit Court. *Toledo, etc., R. W. Co.* v. *Wright,* 68 Ind. 586.

This ruling is not assigned as one of the causes for a new trial, and it is doubtful whether the question is properly presented by an independent assignment of error. *Sidener* v. *Davis,* 87 Ind. 342; *Berlin* v. *Oglesbee,* 65 Ind. 308; *Walker* v. *Heller,* 73 Ind. 46; *Bane* v. *Ward,* 77 Ind. 153; *Knarr* v. *Conaway,* 53 Ind. 120.

However, it clearly appears that no question was raised in the Howard Circuit Court as to the jurisdiction of that court. The appellant appeared and proceeded therein without objection. *Cox* v. *Pruitt,* 25 Ind. 90; *Hamrick* v. *Danville, etc., Gravel Road Co.,* 32 Ind. 347; *Louisville, etc., R. W. Co.* v. *Lockridge,* 93 Ind. 191; *Shirts* v. *Iron,* 47 Ind. 445.

The subject-matter of the action was within the jurisdiction of the Howard Circuit Court, and the full appearance of the parties therein, without objection, under the authorities cited, gave that court jurisdiction.

In our investigation, we have examined many other cases, and find they are not in all respects harmonious, but whatever construction may be given any of them, the inconsistencies are not such as to affect the question here under consideration. Granting that the agreement of

the attorney to become responsible for the costs was a sufficient payment, such payment was not made within the time fixed for perfecting the change. If, because of the failure to perfect the change within the prescribed time, the jurisdiction of the case remained in the Howard Circuit Court, then the order made by the Clinton Circuit Court was nugatory and harmless. If, on the contrary, the Clinton Circuit Court acquired jurisdiction, its action in remanding the cause to the Howard Circuit Court, because of the failure of appellant to perfect the change within the time fixed therefor, was right and proper. If appellee had appeared in the Clinton Circuit Court without objection, she could not afterwards have raised the question that said court had no jurisdiction, on the ground that the change of venue had not been perfected in time. Such an appearance would have been a waiver of the objection.

It is not necessary to prolong the discussion, as our conclusion is that in any event there is no available error shown by the record and presented by the errors assigned, growing out of the ruling of the Clinton Circuit Court in remanding the cause to the Howard Circuit Court.

The next error discussed is the third. It is alleged, in substance, in the complaint, that appellee was on, and previous to, October 25th, 1889, the owner of a tract of land and the stone quarry, fixtures, tools, and machinery thereon situated, in the southern part of the city of Kokomo, contiguous and adjacent to the line of railway owned and operated by appellant; that at the point where the wreck, hereinafter mentioned, occurred, the company, at one time, put in a side track, which had not been used for some time, and which had been abandoned previous to the above date; that at said place the ties used in the track of said railroad were old, and many of

them much rotten, and the connection between the side-track and main line of road was insecure and unsafe; that, at a point about one hundred rods south of the place where the wreck occurred, the appellant's railroad crosses the track of the Kokomo Belt Railroad Company; that on said day a freight train going north, and which consisted of an engine, tender, three or four merchandise cars, thirteen oil tanks filled with oil, about six cars of coal and a caboose, which train was owned by appellant and was then three hours late, and was run, managed and controlled by appellant through its employes, was passing over said track at the high and dangerous rate of speed of thirty-five miles per hour, through the part of the city of Kokomo, adjacent to appellant's land, and without stopping or slackening its speed in crossing the track of said belt railroad.

It is further charged that the act last mentioned was in violation of the statute of the State, and that such rate of speed was dangerous to adjoining property, and that by reason of said high rate of speed and the defective condition of said track and said switch connection the said engine, in passing over the track about the place where said switch intersected the track of appellant's main line of railroad, jumped from said track and caused the wrecking of said train.

The complaint then proceeds: .

"The great momentum and force of said train threw the engine over to the west side of said track, and threw the merchandise cars off the track and wrecked the same with their contents, and threw nearly all the said cars of oil off the track and crowded them into one great mass.

"Said throwing together of the cars composing said train burst the tanks of oil which were carried by said train, and much of the oil therefrom run down upon and over the land and stone quarry owned by the plaintiff.

The Lake Erie and Western Railroad Company *v.* Lowder.

"Some of said oil was, by the wrecking of said train, thrown over upon the fire in the engine of said train, and said oil thrown thereon took fire from the fire in said engine, and a great fire was thereby caused, which extended with said oil from where said wreck occurred for a distance of forty rods or more to the west thereof, where said oil from said wreck run. Said fire which was thus started solely by the negligence of the defendant, was, by the defendant, negligently permitted to escape from the defendant's right of way, and to burn over the plaintiff's land where said oil then was running, said fire being communicated by said burning oil to the plaintiff's property."

It is further charged that the fire and burning oil run down upon and over the land of the appellee and burned and destroyed her property hereinbefore described, all of which is fully and specifically set forth, all of which, it is alleged, occurred by reason of the negligence of appellant in running said train at said high, unlawful and dangerous rate of speed over said defective track, thereby causing said wreck and fire, and by the negligence of appellant in permitting said fire to escape from its right of way, and without any fault or negligence on the part of appellee, etc.

It is earnestly urged, that no acts constituting negligence are specifically averred in the complaint; that the averments constituting the alleged negligence are not sufficient in the absence of a charge that appellant neglected to keep employed and in the line of duty competent employes; that, in addition to the facts stated in the complaint, there should be a charge of omission of duty on the part of the employes in the examination and keeping the track in good repair; that the negligence charged, if any, is simply passive negligence; that the injuries sustained by appellee were not the natural or proximate re-

sult of the negligence charged in the complaint, and that giving the allegations the fullest scope the damages sought to be recovered were the result of an accident.

To attempt to cite, discuss and analyze the authorities relied on by counsel for appellant, in support of their argument as to the insufficiency of the complaint, would unduly extend the limits of this opinion. We have, on careful consideration, reached the conclusion that the complaint states a good cause of action. *Chicago, etc., R. R. Co.* v. *Williams*, 131 Ind. 30, 30 N. E. Rep. 696; *Louisville, etc., R. W. Co.* v. *Nitsche*, 126 Ind. 229; *Chicago, etc., R. R. Co.* v. *Barnes*, 2 Ind. App. 213; *Chicago, etc., R. R. Co.* v. *Smith*, 6 Ind. App. 262, 33 N. E. Rep. 241; *Cincinnati, etc., R. W. Co.* v. *Smock*, 133 Ind. 411, 33 N. E. Rep. 108; *Chicago, etc., R. W. Co.* v. *Spilker*, 134 Ind. 380, 33 N. E. Rep. 280.

It is next earnestly insisted, by counsel for appellant, that there is absolutely no evidence upon which the jury could possibly find for appellee, even by inference. In our investigation of the questions discussed, we have read all the evidence, and while there are, on some points, strong contradictions, there is in the record ample evidence tending to sustain the verdict of the jury. We have been unable to find anything in the rulings of the trial court, of which complaint is made, in relation to the admission or exclusion of evidence, which could be presumed or construed as prejudicial error against appellant. *City of Lafayette* v. *Ashby*, 34 N. E. Rep. 238.

Appellant asked the court to instruct the jury that in order to entitle appellee to recover, she was required to prove, by a preponderance of the evidence, that appellant had been guilty of some act of willful negligence in setting fire to said oil, or that the system of management of appellant was such as would necessarily result in said injuries.

There was no error in refusing to give this instruction. In the first place, it was not responsive to any issue in the case. Moreover, we are not able to see upon what theory it could be construed as a correct statement of the law.

The instructions of the court, when taken and considered all together, as an entirety, fully, fairly, and clearly state the law applicable to the case. The court instructed the jury that if appellee's property was destroyed by fire caused by an accident to appellant's train, arising from a defect in its road, the law would presume negligence. In another instruction, the court said that the burden of proof was on appellant to show that the wreck was caused by the act of vandals. In connection with the other instructions given, these instructions were, on the facts and under the issues, correct and pertinent. *Mullen* v. *St. John*, 57 N. Y. 567; *Pittsburgh, etc., R. R. Co.* v. *Williams*, 74 Ind. 462; *Cleveland, etc., R. W. Co.* v. *Newell*, 75 Ind. 542; *Bedford, etc., R. R. Co.* v. *Rainbolt*, 99 Ind. 557; *Cleveland, etc., R. R. Co.* v. *Newell*, 104 Ind. 264; *Louisville, etc., R. W. Co.* v. *Thompson, Admr.*, 107 Ind. 442.

It is true that a railway company owes a higher duty to passengers than to land owners along the line of its road. The distinction, however, which exists between the two classes of cases does not change the rule applicable to this case, as to the presumption of negligence arising on account of the wreck as the result of a defect in the road, referred to in the instruction, or as to the burden of proof on the question as to whether the wreck was occasioned by the act of vandals. It is the duty of a railway company, so far as the rights of an adjacent property-owner is concerned, to exercise such care and prudence in the maintenance of its track and the run-

ning of its trains, as are usually exercised by prudent and careful persons in similar cases. Such care and skill should be commensurate with the hazards of the undertaking. Great care should be taken in the transportation, through towns and cities, in the night-time, of heavy freight trains, consisting largely of tanks of oil, which, in the event of accident, will probably take fire, explode, run on and over adjoining property, destroying the same and endangering human life. It is true that where adjacent property is damaged as the result of mere accident, there can be no recovery. In order to create liability on the part of the company in such case, the injury must be the natural and proximate result of the negligence, or, in other words, of the want of care and skill on the part of its agents or employes. The instruction in this case relative to the high degree of care and prudence which the company was required to exercise for the safety of adjoining property may be, in some respects, as the statement of a general rule, subject to criticism, but if this was conceded, it does not necessarily follow that the judgment of the trial court should be reversed because of an inaccurate expression or erroneous statement in an instruction. Error, if probably prejudicial or influential against the complaining party, is ordinarily cause for reversal. ·

The instructions, as a whole, in substance, correctly state the law applicable to the evidence and pertinent to the issue; and, in view of all the facts and circumstances connected with the case, we have not been able to discover any error in the instructions which was probably prejudicial to appellant. The theory on which the case was tried in the court below was correct, so far as we can determine. The trial appears to have been fair and impartial, and we have not found any reversi-

The Lake Erie and Western Railroad Company *v.* Lowder.

ble error in the record. *City of Lafayette* v. *Ashby, supra.*

Judgment affirmed.

Filed June 6, 1893.

## ON PETITION FOR A REHEARING.

DAVIS, J.—Counsel for appellant earnestly urge that the petition for rehearing filed herein should be granted. It is insisted that the court has failed to state any reason why the authorities cited in the original opinion support the complaint, or wherein the authorities cited by appellant in support of the position that the alleged injury was the result of unavoidable accident are not applicable, and, further, that the court erred in holding that the complaint states facts sufficient to constitute a cause of action. At the risk of being prolix, but avoiding repetition so far as possible, we will again, and more in detail, review the question presented and the authorities cited.

In support of the proposition that the averments in the complaint show that the injuries in question were, under the authorities, the result purely of accident, counsel for appellant cited in one of their briefs on the original hearing the following cases: *Wabash, etc., R. W. Co.* v. *Locke, Admr.*, 112 Ind. 404; *Brown* v. *Collins,* 53 N. H. 442; *Losee* v. *Buchanan,* 10 Am. Rep. 623; *Hoag* v. *Lake Shore, etc., R. R. Co.*, 85 Pa. St. 293; *Bennett* v. *Ford,* 47 Ind. 264; *Baltimore, etc., R. R. Co.* v. *Rowan,* 104 Ind. 88; *Pennsylvania Co.* v. *Whitlock,* 99 Ind. 16.

The general rule enunciated in the foregoing cases is that a railroad company engaged in operating its road in the usual course of business is not liable for damages done to the property of the adjoining land owner, on account of accidents which occur without fault or negligence on the part of the company.

In *Wabash, etc., R. W. Co.* v. *Locke, Admr.*, *supra*, the principles of negligence are fully and ably discussed, and the doctrine is approved, that when one person is in such position with regard to another, that every one of ordinary prudence would recognize that if he did not use ordinary care and skill in his own conduct, he might cause injury to the person or property of the other a duty arises to use ordinary care and skill to avoid such danger.

In *Hoag* v. *Lake Shore, etc., R. R. Co.*, *supra*, it is held that where an injury arose from negligence, the question of proximate cause is to be decided by the jury upon all the facts of the case, but where the facts are undisputed and the intervening agency is manifest, the question is one for the court, and that in determining what is proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence, such consequence, as under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act.

Conceding that the law is correctly stated in these cases, they do not sustain appellant's contention in this case.

The demurrer to the complaint admits the acts of negligence on the part of the company, as charged in the complaint, and, also, the alleged consequences of such negligence. The facts stated in the complaint clearly show that the injuries to appellee's property were the proximate result of the appellant's negligence, and the consequences thereof, under the circumstances, were such as might have been foreseen by the company as likely to flow from the negligence alleged.

The cases cited in the original opinion, as well as the authorities relied on by appellant, by reason and analogy, support the proposition that where a railroad company negligently and carelessly runs a heavy freight train,

consisting, in part, of several cars of oil, over a defective and unsafe track, through a city, in the night, at a high and dangerous rate of speed, to wit, thirty-five miles an hour, in violation of an ordinance, it is guilty of a positive wrong, and not a mere passive negligence, and is liable for the loss sustained by the burning of the property of the adjacent land owner, occasioned through the wrecking of the train and the consequent flowing and burning of the oil, as the proximate and natural result of such negligence, under the circumstances alleged in the complaint. It was not necessary to aver in the complaint that after the wreck occurred, the company was then and there guilty of any other and additional act of negligence which caused the burning oil to run down hill onto appellee's land. Nothing could have been done after the wreck occurred to prevent such a result. The immediate flowing of the burning oil onto and over appellee's premises, and the consequent burning of her property, was, under the circumstances attending the disaster, inevitable. In other words, in conclusion on this subject, it will suffice to say that the wreck of the train, the ignition, explosion and burning of the oil, and the consequent destruction of appellee's property, are shown, by the averments in the complaint, to have been the natural and proximate result of the negligence of appellant.

It is next insisted that what we have said in criticism of the instructions, and our conclusion that the errors and inaccuracies referred to were uninfluential and harmless, is a radical departure from a long line of adjudicated cases in this State. In this contention counsel are mistaken. The rule referred to, and which we applied in this case, is correctly stated in section 648, Elliott's App. Proced., and is fully supported by the authorities therein cited.

It is contended that the words used in the third instruction, relative to the degree of care imposed on appellant under certain circumstances, were such as required absolute perfection on the part of appellant in the maintenance, operation, and management of its property, and, therefore, that the instruction was radically wrong, and directed the minds of the jury to an improper basis on which to place their verdict. In determining the construction and effect that should have been, or was likely to be, given the objectionable language, the connection in which it was used, the facts and circumstances to which it referred, and the other instructions, as an entirety, should all be considered.

In this connection, we call attention to the fact that there seems to have been no dispute, on the trial, upon the subject that the track of appellant's railroad was in a defective condition at the point where the wreck occurred. The theory of appellant was that such defect was caused by the act of vandals, for the purpose of wrecking another train on that night, and the theory of appellee was that such defect was the result of lack of care and attention on part of appellant. There was evidence tending to prove all the alleged acts of negligence mentioned in the complaint, although it was in some respects contradictory. It is not necessarily, perhaps, unless in violation of a statute or ordinance, an act of negligence to run a freight train, similar to the one in question, at a high rate of speed, in the night-time, through a populous city, but however this might be, it would, we apprehend, ordinarily be actionable negligence to so run such a train over a defective track. Certainly, therefore, under the circumstances disclosed in this case, the appellant, in the transportation through towns and cities, in the night-time, of heavy freight trains, consisting largely of tanks of oil, which, in the event of acci-

dent, were likely to take fire, explode, run on and over adjoining property, destroying the same and likely to endanger human life, should have used such a degree of care and diligence as was commensurate with the hazards of the undertaking.

The instruction was not "fatally erroneous" or "radically wrong," and, therefore, the authorities cited do not apply. *Lower* v. *Franks,* 115 Ind. 334; *Rapp* v. *Kester,* 125 Ind. 79.

A re-examination of the questions involved confirm our opinion that the record discloses no prejudicial error against appellant.

Petition for rehearing overruled.

Filed Sept. 22, 1893.